IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TEOFALO AMEY, )
)
Plaintiff, )
)
v. ) Civil Action No. 3:14CV74–HEH
)
DAN PISAREK, *et al.*, )
)
Defendants. )

## MEMORANDUM OPINION
(Granting Motion to Dismiss Claims One and Three)

Teofalo Amey, a former detainee proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983.[1] The matter is before the Court on the Defendant Dan Pisarek's ("Pisarek") Motion to Dismiss (ECF No. 26) in light of Amey's failure to serve Defendant John Doe and for failure to state a claim. Amey has filed his response (ECF No. 31). For the reasons stated below, the Court will dismiss Amey's claims against Defendant John Doe as well as Claims One and Three against Pisarek.

### I. BACKGROUND

In his Amended Complaint ("Amendend Complaint," ECF No. 6–1), Amey contends that Defendant Pisarek violated his Fourth, Eighth, and Fourteenth Amendment

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

rights stemming from a stop of his vehicle and subsequent arrest. Amey alleges that on April 7, 2012, around 12:30 or 1:00 a.m., Officer J. Bach stopped the vehicle Amey was driving near Woodlawn Elementary School in Hopewell, Virginia. (Am. Compl. at 2.)[2] Amey asked Officer Bach "what was the problem, that he couldn't [have] done anything wrong being that he had just entered the city." (*Id.* at 2–3) Officer Bach then requested that Amey turn on the inside car lights and Amey obliged. (*Id.* at 3) Officer Bach began to address Amey's passenger, pressing him "to confess and [contending] that he was the one who [did] wrong, which caused the traffic stop." (*Id.*) Amey expressed confusion after which Officer Bach explained that he witnessed Amey's passenger commit petit larceny by stealing a case of beer. (*Id.*) Several minutes thereafter, a second officer, John Doe, arrived as backup. (*Id.*) Officer Bach explained to Officer Doe that Amey's passenger had committed petit larceny. (*Id.*) Officer Doe stood back and observed Officer Bach conduct the stop. (*Id.*)

Officer Bach then "told my (Amey's) passenger to confess and stop wasting our time on a minor charge. Amey's passenger admitted to the petit larceny and everyone literally laughed and made jokes about the situation." (*Id.*) Amey's passenger exited the vehicle and Officer Bach placed him in handcuffs. (*Id.*) Officer Bach asked Amey's permission to search the car for the stolen item, and Amey told him "without hesitation that he could search the vehicle." (*Id.* at 3–4.) Officer Bach found the stolen item in the third row of the vehicle. (*Id.*) Officer Doe then instructed Officer Bach to get Amey's information. (*Id.* at 4.) Officer Bach approached Amey's window and thanked him for

---

[2] The Court corrects the capitalization and spelling in the quotations from Amey's Complaint.

being cooperative and explained that he "was a rookie." (*Id.*) Officer Bach asked Amey for his license and registration, and Amey explained that he "never had a license before and was visiting from another state." (*Id.*) Officer Bach conveyed this information to Officer Doe who then instructed Officer Bach to get Amey's information and check it with dispatch. (*Id.*) Amey told Officer Bach that "his name was Vangus Aldo, born 04/07/1982 from Tennessee." (*Id.*) A search of this name and birth date returned no information. (*Id.*) Officer Bach subsequently asked Amey for his social security number. (*Id.*) Amey stated that he did not know it by memory. (*Id.*) After a brief discussion with Officer Doe, Officer Bach explained to Amey "that they were trying to figure out how Amey could follow them to Riverside Regional Jail so he could charge the passenger, release him, and the passenger still have a means of transportation from Riverside Regional Jail." (*Id.* at 5.)

During that time, a third officer arrived at the scene, Officer Dan Pisarek. (*Id.*) After a discussion with the other two officers, who explained that Amey was being cooperative, Officer Pisarek approached the vehicle and "yelled at [Amey] to put his . . . hands on the steering wheel before, he, Pisarek, put 50,000 volts in Amey's black ass." (*Id.*) Amey "was very shocked" by Officer Pisarek's "threats and animosity," so Amey asked Officer Pisarek "why he had disrespected him and such," which Officer Pisarek ignored, and instead asked Amey to remove the keys from ignition and place them on the dashboard. (*Id.*) Officer Pisarek asked for Amey's information again, and Amey told him that he provided his information earlier, but then gave him the same information he had provided the first two officers. (*Id.*)

3

After running the information "which came back with nothing," Officer Pisarek told Amey that he was going to search the vehicle but first asked if he had any drugs or guns on or around him. (*Id.* at 6.) Amey stated that he had knives. (*Id.*) Officer Pisarek told Amey that "knives weren't a big deal." (*Id.*) Officer Pisarek found the knives and told Amey he was going to jail. (*Id.*) Officer Pisarek handcuffed Amey and took items from Amey's pocket including $700 tightly wrapped in a rubber band "which Pisarek very sneakily concealed in his hand as he began to push Amey towards his car." (*Id.*) "When Amey noticed [Officer] Pisarek's wrongdoing he got angry and told Pisarek that since he was going to jail, he, Pisarek, needed to return his belongings like he [was] supposed to." (*Id.*) Officer Pisarek placed Amey in the back of his squad car and then "tore through" Amey's vehicle, opening numerous pieces of Amey's and his fiancée's mail, "went through Amey's cell phones and called people on them" and took other money from the car. (*Id.*) Amey "stated the only reason Pisarek had for doing this was because he was/is a racist." (*Id.*) Officer Pisarek also "took his USB storage device and inserted it into his laptop." (*Id.*) Amey continued to call Officer Pisarek a racist. (*Id.* at 7.) Officer Pisarek lit a cigarette and blew smoke on Amey. (*Id.*)

Officer Pisarek drove to 1818 Freeman Street, Hopewell, Virginia, the home of a Roberta Sanders, "[an address] he obtained from the mail he illegally opened." (*Id.*) Officer Pisarek "pounded on the door and windows while continuously shining his flashlight throughout the house until someone awoke and answered the door." (*Id.*) Mrs. Sanders opened the door "where then Pisarek asked her if she knew Amey's name which she said she did not." (*Id.*) Officer Pisarek asked Mrs. Sanders to call a Latoya Wheeler,

4

Mrs. Sanders's daughter. (*Id.*) Officer Pisarek spoke with Mrs. Wheeler and asked her if "she knew Amey's name where then she gave" Officer Pisarek "Amey's actual name." (*Id.*) Officer Pisarek took Amey to Riverside Regional Jail where he was incarcerated at the time of his Complaint. (*Id.*) Amey alleges that the $700 taken by Officer Pisarek was not placed in his property at the jail. (*Id.*)

Amey brings the following claims for relief:

Claim One: Officer Pisarek violated Amey's Eighth Amendment[3] right against cruel and unusual punishment by harassing, threatening, and falsely arresting Amey.

Claim Two: Officer Pisarek violated Amey's Fourth Amendment[4] rights by illegally searching Amey and seizing his knives, cell phones, money, mail, and USB storage device.

Claim Three: Officer Pisarek violated Amey's Fourteenth Amendment right to equal protection[5] through his "statements and actions" and failure to file a police report. (Compl. 8.)

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim,

---

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[4] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.

[5] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1

a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *see also Iodice v. United States*, 289 F.3d 270, 281 (4th

Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

#### A. Failure to Serve

Pursuant to Federal Rule of Civil Procedure 4(m),[6] Amey had one hundred and twenty (120) days from the filing of the complaint to serve Defendant John Doe.[7] Here, that period commenced on November 26, 2014. By Memorandum Order (ECF No. 39) entered on May 28, 2015, the Court noted that more than 120 days elapsed without Amey's perfection of service upon Defendant John Doe. In that same Memorandum Order, the Court directed Amey to show cause, within eleven (11) days of the date of entry thereof, why the Court should not dismiss his claims against Defendant John Doe. Amey has not responded.

---

[6] Rule 4(m) provides, in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

[7] The Court considers the complaint "filed" on the date it concludes statutory screening under the Prison Litigation Reform Act. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

Rule 4(m) requires that, absent a showing of good cause, the Court must dismiss without prejudice any complaint in which the plaintiff fails to serve the defendant within the allotted 120-day period. Fed. R. Civ. P. 4(m). Courts within the Fourth Circuit found good cause to extend the 120-day time period when the plaintiff has made "'reasonable, diligent efforts to effect service on the defendant.'" *Venable v. Dep't of Corr.*, No. 3:05cv821, 2007 WL 5145334, at *1 (E.D. Va. Feb. 7, 2007) (quoting *Hammad v. Tate Access Floors, Inc.*, 31 F. Supp. 2d 524, 528 (D. Md. 1999)). Amey makes no showing of good cause for his failure to serve Defendant John Doe. Accordingly, Amey's claims against Defendant John Doe will be DISMISSED WITHOUT PREJUDICE.

## B. Amey Fails to State Claim for Eighth Amendment Violation

In any action filed pursuant to § 1983, the Court must first identify the contours of the underlying right said to have been violated. *Graham v. Connor*, 490 U.S. 386, 394 (1989). In Claim One, Amey claims that Officer Pisarek violated his Eighth Amendment rights by "verbal harassment, violent threats, blowing of cigarette smoke in plaintiff's face, illegal arrest, wrongful incarceration, and the unnecessary and wanton infliction of extreme mental and emotional injury." (Am. Compl. at 8.) Amey's allegations must be divided into two types. First, Amey alleges that Officer Pisarek verbally harassed and threatened him. Second, he alleges that Officer Pisarek subjected him to an illegal arrest. In his Brief in Support of Response to Motion to Dismiss ("Response," ECF No. 31), Amey categorizes the portion of Claim One alleging verbal harassment and threats as an excessive force claim. (*Id.* at 3).

8

The conduct of which Amey complains clearly occurred prior to any conviction, thus, the Eighth Amendment prohibition against cruel and unusual punishment does not apply. *Graham*, 490 U.S. at 392 n.6 (citation omitted). Officer Pisarek correctly asserts, and Amey concedes that, any claim pursuant to the Eighth Amendment must be dismissed. (Br. Supp. Mot. Dismiss at 4; Resp. at 2.)

In his brief, Officer Pisarek presumes that Amey was an arrestee during the alleged events. (Br. Supp. Mot. Dismiss at 4.) To the extent Amey challenges Officer Pisarek's conduct leading up to his arrest, this claim is governed by the Fourth Amendment. *See, e.g., Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). For an arrestee, the Court reviews a claim under the "Fourth Amendment's prohibition against 'unreasonable' seizures." *Sawyer v. Asbury*, 537 F. App'x 283, 290 (4th Cir. 2013); *see Graham*, 490 U.S, at 388 (explaining that such claims are "analyzed under the Fourth Amendment's 'objective reasonableness standard'").

Once Amey was lawfully arrested, however, he became a pretrial detainee. *United States v. Cobb*, 905 F.2d 784, 788 (4th Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 865–66 (4th Cir. 1988)). Allegations of excessive force against a pretrial detainee must be evaluated under the Due Process Clause of the Fourteenth Amendment.[8] *Id.* at 788; *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979) (explaining that "Due Process requires that a pretrial detainee not be punished"). For an excessive force claim, the Fourteenth Amendment prohibits "the use of excessive force that amounts to punishment." *Sawyer*,

---

[8] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

9

537 F. App'x at 290 (quoting *Graham*, 490 U.S. at 395 & n.10). Thus, "a plaintiff must show that the defendant 'inflicted unnecessary and wanton pain and suffering' upon the detainee." *Id.* (quoting *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006)).[9]

Officer Pisarek argues that "Amey's allegations are simply an attempt to re-allege and re-package his unlawful search and seizure claims" in Claim Two. (Br. Supp. Mot. Dismiss at 4.) This Court agrees to the extent Amey alleges that Officer Pisarek subjected him to an illegal arrest and seizure under the Fourth Amendment. Accordingly, the portion of Claim One alleging an illegal search and seizure will be dismissed as duplicative of Claim Two. However, Amey's allegations of excessive force remains.

The Court need not determine whether Amey's excessive force claim falls under the Fourth or Fourteenth Amendment because Amey fails to allege an excessive force claim under either. Amey alleges no use of force against him by Officer Pisarek, much less, excessive force. Instead, Amey alleges that Officer Pisarek subjected him to verbal harassment and animosity, threats, including stating that he would use his taser on Amey, generally "disrespected him" (Am. Compl. at 5), and blew cigarette smoke in Amey's face (*Id.* at 7.) Contrary to Amey's suggestion, "[v]erbal harassment and abuse by arresting officers, without more, does not rise to the level of a constitutional claim under § 1983." *Shanklin v. Seals*, No 3:07cv319, 2010 WL 1225741, at *14 (E.D. Va. Mar. 26, 2010) (alteration in original) (citation omitted) (internal quotation marks omitted); *see Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979). To the extent Officer Pisarek threatened to use the taser on Amey, Amey alleges no facts indicating that Officer

---

[9] The Supreme Court's recent decision, *Kingsley v. Hendrickson*, --- S.Ct. ----, 2015 WL 2473447, at *3 (June 22, 2015), does not affect this aspect of the Fourteenth Amendment analysis.

Pisarek did so, or otherwise took action consistent with that threat. "'Only when a verbal threat is combined with action apparently designed to carry out the threat can it constitute a claim of constitutional dimension.'" *Shanklin*, 2010 WL 1225741, at *14 (citations omitted). Amey alleges no use of force by Officer Pisarek. Instead, Officer Pisarek arrested Amey, drove Amey to the house identified on the mail in Amey's car, and subsequently took Amey to Riverside Regional Jail for booking.

Because Amey fails to allege facts indicating that Officer Pisarek used excessive force in violation of the Fourth or Fourteenth Amendment, the remaining portion of Claim One will be dismissed.

### C. Amey Fails to State an Equal Protection Claim

In Claim Three, Amey argues that Officer Pisarek violated his right to equal protection through his "statements and actions" and failure to file a police report. (Am. Compl. at 8.) "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state an equal protection claim, Amey must allege: (1) that he and a comparator arrestee or detainee were treated differently and were similarly situated; and (2) that the different treatment was the result of discrimination. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted). Amey's bare allegation that Officer Pisarek violated his rights through his "statements and actions" fails to state an equal protection claim. Amey identifies neither a similarly situated arrestee nor detainee, nor does he adequately allege facts that plausibly indicate that Officer Pisarek treated him differently from those

11

persons. Accordingly, Amey fails to allege facts indicating that Officer Pisarek violated his equal protection rights. The Court will grant the Motion to Dismiss with respect to Claim Three.[10]

### D. Amey Adequately Alleges a Fourth Amendment Claim

In Claim Two, Amey contends that Officer Pisarek violated his Fourth Amendment rights by illegally searching Amey and seizing his knives, cell phones, money, mail, and USB storage device. Officer Pisarek "denies that Amey's Fourth Amendment rights were violated and specifically denies the allegations contained in the . . . Complaint in that regard, but acknowledges that Amey appears to have stated an illegal search and seizure claim at the pleading stage." (Br. Supp. Mot. Dismiss at 2 n.2.)

### IV. CONCLUSION

Accordingly, the Motion to Dismiss (ECF No 26) will be granted. Claims One and Three will also be dismissed. Any party wishing to file a dispositive motion with respect to Claim Two must do so within sixty (60) days of the date of entry hereof.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: July 16, 2015
Richmond, Virginia

---

[10] Having found that Amey fails to allege claims of constitutional dimension for Claims One and Three, the Court need not address Officer Pisarek's entitlement to qualified immunity.