**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

TEOFALO AMEY,                    )
                                 )
     Plaintiff,                 )
                                 )
v.                               )        Civil Action No. 3:14CV74–HEH
                                 )
DAN PISAREK, *et al.*,           )
                                 )
     Defendants.                )

F I L E D
MAY – 5 2016
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## MEMORANDUM OPINION
### (Granting Motion for Summary Judgment)

Teofalo Amey, a former detainee proceeding *pro se* and *in forma pauperis*, brings

this action under 42 U.S.C. § 1983.[1]  By Memorandum Opinion and Order entered on

July 17, 2015, the Court granted Defendant Dan Pisarek's Motion to Dismiss, dismissed

Claims One and Three, and dismissed Defendant John Doe as a party to the action.  *See*

*Amey v. Pisarek*, No. 3:14CV74–HEH, 2015 WL 4418564, at *6 (E.D. Va. July 17,

2015).  The matter is before the Court on Defendant Pisarek's Motion for Summary

Judgment (ECF No. 42).  Defendant Pisarek provided Amey with the appropriate

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or
> causes to be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law . . . .

42 U.S.C. § 1983.

*Roseboro*[2] notice; however, Amey filed no response. The matter is ripe for disposition. For the reasons stated below, the Court will grant Defendant Pisarek's Motion for Summary Judgment.

In his Amended Complaint ("Complaint," ECF No. 6–1),[3] Amey contends that Defendant Pisarek violated his Fourth Amendment rights by illegally searching Amey and seizing his knives, cell phones, money, mail, and USB storage device.

## I.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate

---

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[3] The Court employs the pagination assigned to the Complaint by the CM/ECF docketing system.

'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the *onus* of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Defendant Pisarek submitted his own declaration (Mem. Supp. Mot. Summ. J. Ex. 1 ("Pisarek Decl."), ECF No. 43–1).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Amey has not responded, and, therefore, he fails to cite the Court to any evidence, such as his

3

Complaint,[4] that he wishes the Court to consider in opposition to the Motion for

Summary Judgment. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need

consider only the cited materials" in deciding a motion for summary judgment); *Forsyth*,

19 F.3d at 1537 (quoting *Skotak*, 953 F.2d 909, 915 & n.7) ("Rule 56 does not impose

upon the district court a duty to sift through the record in search of evidence to support a

party's opposition to summary judgment."). Amey's failure to submit admissible

evidence permits the Court to rely solely on the submissions of Defendant Pisarek in

deciding the Motion for Summary Judgment.

In light of the foregoing principles and submissions, the following facts are

established for the purposes of the Motion for Summary Judgment. All permissible

inferences are drawn in favor of Amey.

## II.    UNDISPUTED FACTS

On April 7, 2012, Defendant Pisarek, an officer with the City of Hopewell Police

Department, was dispatched to assist Officer J. Bach with a traffic stop related to a

reported larceny from a WaWa gas station. (Pisarek Aff. ¶¶ 3–4.) Defendant Pisarek

observed Officer Bach standing on the passenger side of a gold 2001 Ford Windstar

minivan questioning the front seat passenger. (*Id.* ¶ 5.) Defendant Pisarek was told that

---

[4] In his Complaint, Amey stated that: "I have read the foregoing complaint and hereby verify
that the matters therein are true, except as to matters alleged on information and belief, and, as to
those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and
correct." (Compl. 9.) Such statements fail to transform the allegations in the Complaint into
admissible evidence. *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2–3 & n.5
(E.D. Va. June 1, 2011) (quoting *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir.
2001) (unpublished)) (treating statements sworn to under penalty of perjury, but made upon
information and belief as 'mere pleading allegations").

the passenger admitted to petit larceny for stealing a case of beer that was found in the

vehicle driven by Amey and that Amey had consented to a general search of the vehicle.

(*Id.*)[5] Defendant Pisarek approached the driver's side of the van and requested Amey's

information to determine his identity, whether he had a driver's license, whether he

lawfully possessed the vehicle, and whether there were any outstanding warrants for

Amey. (*Id.*) Amey advised that he had no identification or a wallet on his person. (*Id.*

¶ 6.) Amey told the officers that his name was Aldo Vahgus and his date of birth was

April 7, 1982. (*Id.*) Defendant Pisarek called this information into dispatch; however,

the information provided no results. (*Id.*) Defendant Pisarek then requested Amey's

social security number, but Amey claimed that he did not know it. (*Id.*) Amey again

provided a date of birth that did not match with the name he provided according to the

police database. (*Id.*)

Amey also indicated that he did not know his address because he had just moved

from Kentucky. (*Id.* ¶ 7.) Subsequently, "Amey changed his story, stating that he was

from Tennessee." (*Id.*) Amey told Defendant Pisarek that the vehicle belonged to the

mother of his child, and he claimed he did not know her address. (*Id.* ¶ 8.) Amey then

"became less cooperative and showed signs of becoming hostile through use of profane

language." (*Id.*)

At that point, Defendant Pisarek advised Amey that he was being detained for

positive identification. (*Id.* ¶ 9.) Defendant Pisarek also suspected Amey of petit larceny

---

[5] Defendant Pisarek did not learn Amey's identity or his name until much later. The Court, however, refers to Amey by his name for clarity.

for assisting his passenger in stealing beer and because he admitted to operating a vehicle without a driver's license, both violations of Virginia law. (*Id.*) Defendant Pisarek additionally suspected that there might be an outstanding warrant for Amey's arrest because he had provided false information to a police officer, yet another violation of Virginia law. (*Id.*) Defendant Pisarek explains: "In my 20 years of experience as a police officer, individuals such as Amey who are evasive in answering questions about their identity, provide false information about their identity during a traffic stop, and become less cooperative, are likely wanted for arrest on an outstanding warrant." (*Id.*)

Defendant Pisarek asked Amey to exit the vehicle, and Amey complied. (*Id.* ¶ 10.) Defendant Pisarek asked Amey if he had anything on his person that might constitute a weapon. (*Id.*) Amey stated that he had a knife. (*Id.*) Defendant Pisarek observed an object under Amey's shirt on his right hip, and then quickly handcuffed Amey. (*Id.*)

While patting down the exterior of Amey's clothing, Defendant Pisarek felt two long objects, and it was immediately apparent to him that the objects were two very large knives based on their shape and size. (*Id* ¶ 11.) Defendant Pisarek removed the objects from Amey's pant leg and discovered that they were machetes. (*Id.*) Amey admitted they belonged to him. (*Id.*) Defendant Pisarek advised Amey that he was under arrest for carrying two concealed weapons. (*Id.*) Amey became less cooperative and began making racial slurs towards Defendant Pisarek and accused Defendant Pisarek of being a racist. (*Id.*) At this point, Defendant Pisarek was still unaware of Amey's true identity. (*Id.*)

The vehicle driven by Amey was registered to the address 1818 Freeman Street in Hopewell, Virginia, approximately two miles away from the location of the traffic stop. (*Id.* ¶ 12.) In an effort to ascertain Amey's identity, Defendant Pisarek drove Amey to that address. (*Id.*) Defendant Pisarek spoke with the residents of 1818 Freeman Street, who were the parents of the vehicle's owner. (*Id.* ¶ 13.) They identified Amey as the father of their daughter's children but only knew him as "T.O." (*Id.*) Defendant Pisarek asked the residents to call their daughter, Latoya Wheeler. (*Id.*) Ms. Wheeler was reached, and she identified Amey as "Teofalo" or "T.O." (*Id.* ¶ 14.) Dispatch found a match based on this name and the April 7, 1980 birth date that Amey previously provided. (*Id.*) Records indicated that he was Teofalo Amey, and that he had a suspended driver's license and an outstanding warrant in Petersburg. (*Id.*)

Amey was transported to Riverside Regional Jail where he was formally charged with two counts of carrying a concealed weapon, providing false information to police, and driving on a suspended license. (*Id.* ¶ 15.) Amey was held without bond "due to a consideration of violent criminal history." (*Id.*)

Defendant Pisarek did not search the vehicle Amey was driving. The two machetes were the only property of Amey's that Defendant Pisarek seized, and they were placed in evidence according to Hopewell Police Department policy. (*Id.* ¶ 16.)

## III. ANALYSIS

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)

7

(quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Thus, Amey must

demonstrate that each defendant had "personal knowledge of and involvement" in the

alleged constitutional deprivation to establish liability under § 1983. *Id.*

Amey alleges: "The illegal search of his person and vehicle and the illegal seizure

of his knives, cell phones, money, mail, and a USB storage device violated Teofalo

Amey's rights and constituted unreasonable searches and seizures under the FOURTH

AMENDMENT to the United States Constitution." (Compl. ¶ 32.) As a preliminary

matter, the record conclusively establishes that Defendant Pisarek did not search the

vehicle and did not seize cell phones, money, mail, and a USB storage device belonging

to Amey from the vehicle. (Pisarek Aff. ¶ 16.) Thus, Amey fails to demonstrate any

personal involvement by Defendant Pisarek in either the search of his vehicle or the

confiscation of these items.

With regard to the remaining portion of the claim, the purported "illegal search of

his person" and "the illegal seizure of his knives," Amey fails to demonstrate that

Defendant Pisarek violated his Fourth Amendment rights.[6]

The Fourth Amendment protects individuals "against unreasonable searches and

seizures." U.S. Const. amend. IV. Here, the only search that Defendant Pisarek

---

[6] "When qualified immunity is asserted, the reviewing court should usually first ask whether the right was violated on the facts [established at summary judgment], and then determine whether that right was 'clearly established.'" *LeSueur-Richmond Slate Corp. v Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012) (citing *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009)). For the reasons set forth below, Amey fails to establish a violation of his rights under the Fourth Amendment. Thus, the Court need not address qualified immunity.

conducted of Amey was the protective pat-down of Amey's person that resulted in the seizure of two knives.[7]

### A.    Detention after Stop

If an officer has reasonable suspicion, based on articulable facts, that criminal activity is afoot, that officer may stop and briefly detain a person for investigative purposes without running afoul of the Fourth Amendment. *See Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000); *Terry v. Ohio*, 392 U.S. 1, 30 (1968). A "reasonable, articulable suspicion" is "more than an inchoate and unparticularized suspicion or hunch" but "less . . . than probable cause." *Wardlow*, 528 U.S. at 123–24 (citation omitted) (internal quotation marks omitted).  To determine whether reasonable articulable suspicion existed, courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation omitted). Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available." *Id.* (citation omitted). The Court "consider[s these inferences] in their totality, not piecemeal and in isolation." *United States v. Darden*, No. 96–4357, 1998 WL 340400, at *5 (4th Cir. June 16, 1998).

Here, Defendant Pisarek had a reasonable articulable suspicion to question and detain Amey based on the knowledge that the passenger in the vehicle driven by Amey

---

[7] Amey only challenges the search of his person and the seizure of his knives. Amey raises no challenge to the initial stop of the vehicle and the evidence establishes that Defendant Pisarek arrived after the initial stop. Amey also does not challenge the "seizure" of his person, *ie.*, his initial detention or his arrest; however, the Court briefly addresses why the evidence demonstrates that neither violated the Fourth Amendment.

had admitted to petit larceny for stealing a case of beer that was found in the vehicle, and

because of Amey's provision of false and incomplete information that frustrated

Defendant Pisarek's ability to positively identify Amey. Defendant Pisarek requested

Amey's driver's license to determine his identity, whether he could lawfully operate the

vehicle, whether he lawfully possessed the vehicle, and whether any outstanding warrants

existed for Amey. (Pisarek Aff. ¶ 5.) Amey indicated that he had no wallet or

identification with him and provided false information about his identity. (*Id.* ¶ 6.)

Amey also indicated that he did not know his social number or his address. (*Id.* ¶¶ 6–7.)

Amey then indicated that he had moved from Kentucky, but later said he was from

Tennessee. (*Id.* ¶¶ 7–8.) Amey also indicated that the vehicle belonged to the mother of

his children, but he did not know her address either. (*Id.* ¶ 8.) Defendant Pisarek advised

Amey that he was being detained for positive identification. (*Id.* ¶ 9.) Defendant Pisarek

suspected Amey of petit larceny for assisting his passenger in stealing beer and because

he admitted to operating a vehicle without a driver's license, both violations of Virginia

law. (*Id.*) Defendant Pisarek also reasonably suspected that Amey may be wanted on an

outstanding warrant due to Amey's evasive answers to questions and his failure to reveal

his true identity. (*Id.*) Based on the totality of the circumstances, Defendant Pisarek

clearly had reasonable articulable suspicion to detain Amey to ascertain his identity and

likely had probable cause to arrest him.[8]

---

[8] At this juncture, Defendant Pisarek had probable cause to believe that Amey was guilty of at
least three crimes: petit larceny, in violation of section 18.2-96 of the Virginia Code; driving
without a license, in violation of section 46.2-300 of the Virginia Code; and providing a false
identity to a police officer, in violation of section 19.2-82.1 of the Virginia Code. While

### B.      Request to Exit The Vehicle

Next, Defendant Pisarek asked Amey to exit the vehicle and Amey complied. (*Id.*

¶ 10.) The order to exit the car was an "additional intrusion [that] can only be described

as *de minimis*" under the Fourth Amendment. *Pennsylvania v. Mimms*, 434 U.S. 106,

111 (1977) (footnote omitted) (explaining that "[w]hat is at most a mere inconvenience

cannot prevail when balanced against legitimate concerns for the officer's safety"). Thus,

Defendant Pisarek's request for Amey to exit the car was reasonable and permissible

under the Fourth Amendment.

### C.      Weapons Frisk

Finally, the situation here also justified Defendant Pisarek's decision to frisk

Amey for weapons and to place him in handcuffs to effectuate that search.  Amey

admitted to Defendant Pisarek that he had a knife, and Defendant Pisarek observed an

object under Amey's shirt on his right hip. (Pisarek Aff. ¶ 10.)  Defendant Pisarek then

quickly handcuffed Amey. (*Id.*)  An officer is justified in conducting a limited search for

weapons once he reasonably concludes that the person he has stopped might be armed

and presently dangerous. *Mimms*, 434 U.S. at 111–12 (citing *Terry*, 392 U.S. at 17).

Moreover, placing Amey in handcuffs prior to conducting the pat-down also failed to turn

the encounter into an arrest. *See United States v. Crittendon*, 883 F.2d 326, 329 (4th Cir.

1989); *see also United States v. Elston*, 479 F.3d 314, 320 (4th Cir. 2007) (quoting

*United States v. Leshuk*, 65 F.3d 1105, 1109–10 (4th Cir. 1995)) (recognizing that

---

Defendant Pisarek could have arrested Amey at this time, he did not arrest Amey until after he
searched him and found the knives.

"drawing weapons, handcuffing a subject, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest"). Defendant Pisarek's use of handcuffs in light of Amey's admission that he had a knife was "reasonably necessary to maintain the status quo and protect [officer] safety during an investigative stop." *Crittendon*, 883 F.3d at 329 (alteration in original) (quoting *United States v. Taylor*, 857 F.2d 210, 213) (4th Cir. 1988)); *see Leshuk*, 65 F.3d at 1109.

### D.   Defendant Pisarek Had Probable Cause to Arrest Amey

Defendant Pisarek felt two long objects during his pat-down of Amey, and it was immediately apparent to him that the objects were two very large knives based on their shape and size. (Pisarek Aff. ¶ 11.) Defendant Pisarek removed the objects from Amey's pant leg and discovered that they were machetes. (*Id.*) Amey admitted they belonged to him. (*Id.*) Defendant Pisarek advised Amey that he was under arrest for carrying two concealed weapons. (*Id.*)

An officer has probable cause to arrest a suspect when "the totality of the circumstances indicate to a reasonable person that a 'suspect has committed, is committing, or is about to commit' a crime." *United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004) (quoting *Michigan v. DeFillippo*, 443 U.S, 31, 37 (1979)). The Court finds probable cause to arrest when "at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Garcia*, 848 F.2d 58, 59–60 (4th Cir. 1988) (quoting *United States v. Manbeck*, 744 F.2d

12

360, 376 (4th Cir. 1984)).  The probable cause standard requires neither "that the

officer's belief be more likely true than false," *Anderson v. Caldwell Cty. Sheriff's Office*,

524 F. App'x 854, 861 (4th Cir. 2013) (unpublished) (citation omitted), nor that the

officer have evidence sufficient to convict the suspect. *Brown v. Gilmore*, 278 F.3d 362,

367–68 (4th Cir. 2003).

It is undisputed that Defendant Pisarek had probable cause to arrest Amey based

on at least three violations of Virginia law and the fact that there was an outstanding

warrant for Amey's arrest.  Thus, Amey fails to demonstrate that Defendant Pisarek

violated his Fourth Amendment rights.  Accordingly, Claim Two, and the action, will be

dismissed.

## IV.    CONCLUSION

The Motion for Summary Judgment (ECF No. 42) will be granted.  Amey's claim

and the action will be dismissed with prejudice.

An appropriate Order shall accompany this Memorandum Opinion.

 

 

                                                             /s/

Date: May 5, 2016                HENRY E. HUDSON
Richmond, Virginia               UNITED STATES DISTRICT JUDGE